**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael DiPietro, | No. CV-14-00502-PHX-DGC |
| Petitioner, | **ORDER** |
| v. | |
| Martina Hutchinson, et al., | |
| Respondents. | |

Petitioner Michael DiPietro has filed a petition to vacate or modify an arbitration award. Docs. 1, 35. Respondent First Allied Securities, Inc. has filed a response and DiPietro has filed a reply. Docs. 24, 43. The Court heard oral argument on September 26, 2014. For the reasons that follow, the Court will deny DiPietro's petition and confirm the arbitration award.[1]

**I.  Background.**

DiPietro is a resident of California and a member of the Financial Industry Regulatory Authority ("FINRA"). Doc. 35 at 1. First Allied is an independent broker-dealer registered with the Securities and Exchange Commission ("SEC"), FINRA, and state securities commissions. Doc. 24 at 2. On October 8, 2004, DiPietro and First

---

[1] DiPietro's original petition sought declaratory relief and named additional respondents, but the claims for declaratory relief and against the other respondents have been dismissed voluntarily. Docs. 39, 51, 65. In addition, at a conference on August 5, 2014, the parties agreed that the Court may treat briefing on the petition as cross-motions for summary judgment and resolve the case on the merits in this order. Doc. 65.

Allied entered into an Independent Contractor Agreement ("ICA") which provided that DiPietro would act as a registered representative of First Allied in selling securities, insurance, and advisory services. The parties agreed to terminate the relationship in December 2008. Doc. 35 at 1.

### A. The DiPietro Arbitration.

In February 2010, DiPietro initiated a FINRA arbitration against First Allied. Among other claims, he alleged that First Allied breached the ICA. After a nine day hearing, the arbitration panel ruled in favor of DiPietro and awarded him $180,000 plus interest. Doc 35-3.

### B. The Hutchinson Arbitration.

Martina Hutchinson and her husband were clients of First Allied during 2008. DiPietro served as their financial advisor. The Hutchinsons purchased three investments from First Allied: ARI-International Business Park, LLC Tenant in Common; DRG Cason Estates, LLC Tenant in Common; and Texas Energy Holdings, Inc. Tenant in Common. DiPietro claims that none of these products was registered with the SEC, in violation of Section 5 of the Securities Act of 1933, that First Allied withheld negative due diligence regarding one of the investments, and that he advised the Hutchinsons against purchasing them. Doc. 1 at 3.

On September 19, 2012, Martina Hutchinson filed a FINRA arbitration claim against First Allied regarding the investments. Doc.1-5. First Allied responded with an answer and a third-party claim against DiPietro. The claim against DiPietro sought indemnity or contribution under the ICA for any damages awarded to Hutchinson, and reimbursement of fees and costs incurred by First Allied in defending the action.

DiPietro responded to the third-party claim, denied the allegations, asserted affirmative defenses, and brought a counterclaim against First Allied for malicious prosecution and abuse of process. Doc. 1-7. DiPietro asserted that First Allied had unclean hands and was solely responsible for wrongdoing in the sale of the securities to the Hutchinsons. He also argued that the first FINRA arbitration had found that First

Allied materially breached the ICA, discharging him as a matter of law from any indemnity obligation under the ICA. *Id.*

Over the next several months, the parties exchanged discovery. In December 2013, First Allied and Hutchinson participated in a mediation and settled Hutchinson's claim. Doc. 1-8. DiPietro and his counsel participated by phone, but the third-party claim against him was not settled.

### C.   Notice of the Arbitration Hearing.

On January 29, 2013, and before First Allied filed the third-party claim against DiPietro, counsel for First Allied and Hutchinson participated in a pre-hearing conference with the FINRA arbitrators. The arbitrators set an arbitration date of January 6, 2014, in Phoenix, Arizona. A scheduling order was issued after the conference, apparently on February 4, 2013. Doc. 1-10.

First Allied sought to file the third-party claim against DiPietro on January 29, 2013, the same day as the scheduling conference, but fee payment issues resulted in FINRA not accepting the claim until February 14, 2013. DiPietro was not served with the third-party claim until several days after the scheduling conference. A copy of the scheduling order was not included in the papers served on DiPietro. Doc. 35 at 15.

DiPietro claims that he did not receive notice of the January 6, 2014 arbitration hearing until December 16, 2013, when counsel for First Allied contacted his lawyer and requested an extension of the deadline for filing witness and exhibit lists. When contacted about this extension, DiPietro's lawyer, Marie Mirch, states that she telephoned the FINRA office in Los Angeles and was informed about the pre-hearing conference held on January 29, 2013, and the arbitration hearing scheduled for January 6, 2014. Doc. 35-11. Mirch did not agree to the deadline extension sought by First Allied. She instead stated that she would be sending her list of witnesses and exhibits to First Allied by the deadline, which was the next day.

First Allied claims DiPietro was given notice of the hearing date by other means. On November 7, 2013, Hutchinson's counsel filed a motion seeking a subpoena of

1  DiPietro to appear at the January 6, 2014 hearing. The requested subpoena stated that the hearing would be held "**in Phoenix, Arizona,** . . . **at 9:30 a.m. on January 6, 2014** . . ." (emphasis in original). Doc. 24-13. Each of DiPietro's attorneys received this motion.

### D.  Continuance and Change of Venue Requests.

On December 24, 2013, DiPietro filed a request to change the hearing location to California because that was the place where the business between First Allied, DiPietro, and the Hutchinsons had been conducted. Doc. 35-10. The motion also noted that DiPietro had not been served with the scheduling order in accordance with FINRA Rule 12303 and that his lead counsel, Kevin Mirch (Marie Mirch's husband), was unavailable on January 6, 2014 due to a conflict. *Id*. On January 2, 2014 the President of the FINRA Dispute Resolution denied DiPietro's motion but encouraged him to file it with the panel. Doc. 35-12. DiPietro filed an emergency motion with the arbitration panel, setting forth reasons similar his previous request. Doc. 35-13. On January 3, 2014, the FINRA panel issued an order granting a postponement of the hearing and setting a conference for January 6, 2014. Doc. 35-14.

The parties conferred with the full FINRA arbitration panel on January 6, 2014. The panel ordered the hearing to begin on January 14, 2014, and to continue through January 17, 2014 if necessary. Doc. 35-15. The panel denied DiPietro's requests to change venue. *Id*.

On January 7, 2014, DiPietro filed an emergency motion to reconsider the change venue and to continue the hearing in order to have time to find local counsel in Arizona. Doc. 35-16. The motion was denied on January 10 by the FINRA panel. Doc. 35-17. The same motion was submitted to and denied by the FINRA Director. Doc. 35-18.

### E.  The Arbitration Hearing.

The hearing commenced on January 14, 2014, and lasted two days. Doc. 24, 7. A panel of three FINRA arbitrators presided. *Id*. DiPietro was represented by Marie Mirch and local counsel from Chester & Shein, P.C. The parties made opening statements, presented documentary evidence, called witnesses, and made closing statements. *Id*.

DiPietro presented more than 30 exhibits. *Id*. DiPietro argued that First Allied's claims for indemnification and contribution were barred because the prior arbitration had ruled that First Allied materially breached the ICA. Doc. 24 at 8. This prior finding, according to DiPietro, triggered res judicata or collateral estoppel. DiPietro's counsel requested, and the panel granted, the opportunity to submit post-hearing briefs. DiPietro submitted a post-hearing brief of the legal theories he asserted at the hearing. Doc. 24-17.

On February 10, 2014, the FINRA panel issued a unanimous decision. Doc. 24-19. The panel held that DiPietro liable to First Allied for $100,000 in compensatory damages, post-judgment interest at a rate of 8%, $56,047.55 in attorneys' fees under the ICA, and $1,458.24 in witness fees. *Id*. The panel denied DiPietro's third-party counterclaims. *Id*.

## II.     Legal Standards.

Both parties agree that the Federal Arbitration Act ("FAA") applies to this dispute. Section 10 of the FAA identifies the relevant grounds for vacating an arbitration award:

> (a)     In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> * * *
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.[2]

---

[2] DiPietro also cites Arizona and California statutes in support of his request that the arbitration award be vacated. Those statutes mirror the FAA closely and provide no additional grounds for vacating the award. Doc. 43 at 9.

- 5 -

The Court's review of the arbitration award is "limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.,* 84 F.3d 1186, 1190 (9th Cir. 1996). Under the FAA, "confirmation is required even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (citations omitted). Arbitrators exceed their powers "not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.'" *Id.* (citations omitted); *see also G.C. & K.B. Invs., Inc. v. Wilson,* 326 F.3d 1096, 1105 (9th Cir. 2003) ("It is not even enough that the [arbitrator] may have failed to understand or apply the law. An arbitrator's decision must be upheld unless it is completely irrational or it constitutes a manifest disregard of the law." (citation omitted)). So long as the arbitration award "draws its essence" from the contract, or offers a plausible interpretation of the contract, then the court must enforce it. *Sheet Metal Workers' Int'l Ass'n*, 84 F.3d at 1190 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)).

**III.   Analysis.**

    **A.   Lack of Notice.**

DiPietro asks the Court to vacate the arbitration award because he was not given notice of the hearing. Basic procedural due process, of course, requires notice and an opportunity to be heard.

FINRA Rule 12303 required First Allied to serve DiPietro with documents previously served by any party or issued by FINRA when it served him with the third-party claim. First Allied does not dispute that its service did not include the scheduling order. First Allied asserts that it served DiPietro by overnight mail on February 4, 2013, the day the scheduling hearing order was mailed by FINRA, and that it was not required to include the order because it had not yet received the order.

Despite the fact that DiPietro was not served with the scheduling order, the Court cannot conclude that he was denied reasonable notice of the arbitration hearing. DiPietro

- 6 -

1    and his counsel participated in the arbitration litigation for almost one year after the
2    scheduling order had been entered. Papers included in the service packet received by
3    DiPietro in early February made clear that an Arizona arbitration panel had been selected
4    and Phoenix was the place where the arbitration would be held. Doc. 24-7 ("FINRA has
5    selected **Phoenix, AZ** as the hearing location for this case.") (emphasis in original).
6    DiPietro and his counsel were at least on notice from these documents that arbitration
7    decisions had been made prior to his service in the case.

8        What is more, on November 7, 2013, Hutchinson's counsel filed a motion which
9    sought to subpoena DiPietro to attend the hearing. The proposed subpoena stated that the
10   hearing would be held "**in Phoenix, Arizona,** . . . **at 9:30 a.m. on January 6, 2014**"
11   (emphasis in original). Doc. 24-13. DiPietro does not dispute that his counsel received a
12   copy of this motion. Thus, DiPietro had notice of the hearing date at least two months in
13   advance.

14       DiPietro mounted an active defense during the arbitration hearing and had the
15   opportunity to submit a post-hearing brief. He argues, primarily in his reply brief, that he
16   was unable to subpoena several witnesses who resided in California because the
17   arbitration was held in Arizona, but the Court cannot attribute this inability to late notice
18   of the hearing date. DiPietro and his counsel had notice from the time he was served in
19   February 2013 that the arbitration would occur in Arizona. If he and his counsel were
20   concerned about an inability to subpoena witnesses in Arizona, they had ample time to
21   raise this issue with the panel and seek a change of venue to California.

22       **B.**    **FINRA's Refusal to Postpone the Hearing.**

23       DiPietro claims that the arbitration award should be vacated under § 10(c) of the
24   FAA because the arbitrators were guilty of misconduct in refusing to postpone the
25   hearing. 9 U.S.C. § 10(c). DiPietro notes that there had been no other continuance
26   requests, the request was made for legitimate reasons, and there was no prejudice to First
27   Allied. Doc. 35 at 14.

28       As noted above, however, the Court DiPietro had reasonable notice of the

1  January 6, 2014 hearing by virtue of his participation in the arbitration litigation for
2  almost one year and his receipt of subpoena requests two months before the hearing was
3  scheduled to begin.  The Court similarly concludes, therefore, that the arbitrators were
4  not guilty of misconduct when they required the arbitration to proceed on January 14,
5  2014, eight days after it was originally scheduled to start.

6  DiPietro argues that the refusal to move the hearing date denied him counsel of his
7  choice, but he was represented at the hearing by Marie Mirch, the attorney who had been
8  his counsel from the outset of the arbitration proceedings.  He argues that his lead
9  counsel, Kevin Mirch, was unavailable for the hearing, but that issue was not raised with
10 the arbitrators until December 24, 2013, only two weeks before the arbitration was
11 scheduled to begin.  At the latest, it should have been raised in early November when
12 DiPietro and his counsel received documents showing that the hearing was set to begin
13 on January 6, 2014.

14 DiPietro also argues that the refusal to move the hearing date or location forced
15 him to retain Arizona counsel at the last minute.  But as noted above, DiPietro received
16 documents in February of 2013 stating that the hearing would be held in Phoenix.  He
17 had ample time to retain Arizona counsel.

18 Courts, as a rule, will not intervene in an arbitrator's decision not to postpone a
19 hearing if any reasonable basis for it exists.  *El Dorado Sch. Dist. No. 15 v. Cont'l Gas
20 Co.,* 247 F. 3d 843, 848 (8th Cir. 2001); *Sheet Metal Workers Int'l Assoc. Local Union
21 #420 v. Kinney Air Conditioning Co.,* 756 F. 2d 742, 746 (9th Cir. 1985).  The Court
22 concludes that DiPietro's longstanding participation in the arbitration proceedings, the
23 fact that he knew the Arizona location of the arbitration from the outset, and the fact that
24 he knew the date of the hearing at least two months before the hearing began all provided
25 a reasonable basis for denying his request to postpone the hearing date.  The panel also
26 could reasonably have considered fairness for First Allied, as the hearing had been set for
27 almost a year.

28

### C. Did the Arbitrators Exceed their Authority?

DiPietro claims that the award must be vacated because the arbitrators exceeded their authority. Doc. 35 at 15; 9 U.S.C. §10(a)(4). Specifically, DiPietro claims that the arbitrators exceeded their authority by violating the venue clause in the ICA, imposing a duty to cooperate on DiPietro, and treating First Allied's indemnity claim as one of strict liability.

#### 1. Change of Venue.

DiPietro's counsel agreed at oral argument that FINRA rules require a customer-initiated arbitration like this one to be held near the customer's location, and that Arizona was the proper location for Ms. Hutchinson. DiPietro argues, however, that First Allied's claims for indemnification or contribution should have been severed and heard in California, or, after Hutchinson settled, the remaining claims should have been moved to California.

As noted above, however, DiPietro was served with papers in February of 2013 that showed the hearing would occur in Arizona. He did not seek to change the hearing location to California until some ten months later and only two weeks before the hearing. The Court cannot find that the arbitrators exceeded their authority by denying this last-minute request. Di Pietro sites no authority providing that arbitrators must honor forum selection clauses even when they are invoked for the first time on the eve of a long-scheduled arbitration hearing.

Generally, the applicability of a forum-selection clause is decided by the arbitrators. *See UBS Financial Svcs., Inc. v. West Virginia University Hospitals, Inc.*, 660 F. 3d 643, 644 (2d Cir. 2011) ("we hold that venue is a procedural issue that FINRA's arbitrators should address in the first instance, and that the District Court lacked subject matter jurisdiction to resolve it."). This is particularly true when invocation of the clause comes late in the proceeding and raises procedural issues regarding completion of the arbitration. *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) (courts decide arbitrability, while arbitrators resolve procedural issues).

- 9 -

1         **2.      Duty to Cooperate.**

2         DiPietro claims that the arbitrators unfairly added a "failure to cooperate" claim in
3 excess of the scope of the pleadings. The Court does not agree. There is no evidence in
4 the arbitrators' award that they based their decision on a breach of a duty to cooperate.
5 Doc. 24-19. First Allied asserts that it was allowed to present evidence of DiPietro's
6 failure to cooperate to explain the events leading to the filing of the third-party claim and
7 to defend against DiPietro's counterclaims of malicious prosecution and abuse of process.
8 Doc. 24 at 17. Whether the arbitrators erred in admitting evidence is well beyond the
9 review of this Court under the FAA.

10        **3.      Strict Liability.**

11        DiPietro claims that the arbitrators exceeded their authority by treating First
12 Allied's indemnity claim as one of strict liability. Here again, DiPietro takes issue with
13 the arbitrators' legal conclusions. He argues that First Allied cannot be indemnified
14 against its own negligence absent specific language which compels such a result, but the
15 arbitrators did not find First Allied negligent and this court does not have the power to
16 review the arbitrators' factual finding. It cannot be said that the arbitrators exceeded their
17 authority merely because they came to what DiPietro regards as an erroneous conclusion
18 of law or fact. *Kyocera*, 341 F.3d at 997.

19        **4.      Other Legal Arguments.**

20        DiPietro restates many of the arguments he made to the arbitrators: the previous
21 arbitration award was binding on this arbitration panel, First Allied's breach of the ICA
22 rendered it unenforceable in this case, First Allied cannot receive indemnity for its own
23 misconduct, and First Allied was not entitled to equitable indemnity. But his
24 disagreement with the arbitration decision does not constitute grounds for vacating that
25 decision. As noted above, "[t]t is not even enough that the [arbitrator] may have failed to
26 understand or apply the law. An arbitrator's decision must be upheld unless it is
27 completely irrational or it constitutes a manifest disregard of the law." *G.C. & K.B.*
28 *Investments, Inc.*, 326 F.3d at 1105 (citation and quotation marks omitted)

### D. Right to Counsel.

At oral argument, DiPietro's counsel explained that DiPietro was denied the right to have Kevin Mirch represent him at the arbitration hearing because Mr. Mirch was not available on January 14, 2014. DiPietro has not shown, however, that the arbitrators' decision to proceed with the long-scheduled hearing after a one-week postponement was "completely irrational" or exhibited a "manifest disregard of law." *Kyocera Corp., Inc.*, 341 F.3d at 997. As discussed above, DiPietro was represented at the hearing by Marie Mirch, an attorney who had been involved in his defense from February of 2013. Nor did DiPietro seek to move the date of the hearing until two weeks before it was scheduled to begin, almost one year after it was set, and at least six weeks after his counsel received a motion reflecting the hearing date of January 6, 2014. Given these circumstances, the Court cannot conclude that the arbitrators acted improperly, much less irrationally, in proceeding with the hearing after a one-week delay.

**IT IS ORDERED** that DiPietro's amended petition (Doc. 35) is **denied** and the arbitration award at issue in this case is **confirmed** pursuant to 9 U.S.C. § 9.

Dated this 1st day of October, 2014.

_____
David G. Campbell
United States District Judge